**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KRZYSZTOF DOROZ,**

                               **Plaintiff,**

   vs.                                                        **6:12-CV-391
                                                                     (MAD/ATB)**

**TECT UTICA CORP.,**

                               **Defendant.**
_____

**APPEARANCES:**                                         **OF COUNSEL:**

**BOSMAN LAW OFFICE**                     **AJ BOSMAN, ESQ.**
6599 Martin Street                             **DANIEL W. FLYNN, ESQ.**
Rome, New York 13440
Attorneys for Plaintiff

**CLARK HILL PLC**                           **STEPHEN D. TURNER, ESQ.**
200 Ottawa Avenue NW
Suite 500
Grand Rapids, Michigan 49503
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     On November 11, 2011, Plaintiff Krzysztof Doroz commenced this action by filing a notice with summons in New York State Supreme Court. Following Defendant's removal of the action to the United States District Court for the Northern District of New York, Plaintiff filed a complaint alleging that Defendant discriminated and retaliated against him based upon his national origin in violation of 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1981. Currently before the Court is Defendant TECT Utica Corp.'s motion to dismiss Plaintiff's First and Second Causes of Action, Dkt. No. 14, and Plaintiff's cross-motion to amend, Dkt. No. 17.

## II. BACKGROUND

Plaintiff initiated this proceeding by filing a notice with summons in New York State Supreme Court. After Defendant was served with the notice and summons, Defendant properly removed this case to federal court on March 1, 2012. *See* Dkt. No. 1. Thereafter, Plaintiff filed a complaint on April 9, 2012, *see* Dkt. No. 3, which Defendant answered, *see* Dkt. No. 5. On July 6, 2012, Defendant filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, a motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). *See* Dkt. No. 8. In a January 28, 2013, Memorandum-Decision and Order ("January 28 Order"), this Court declined to convert Defendant's motion into a motion for summary judgment, granted without prejudice Defendant's motion for judgment on the pleadings on Plaintiff's First and Second Causes of Action for failure to plead exhaustion of administrative remedies, and denied the motion for judgment on the pleadings in all other respects. *See* Dkt. No. 13. Specifically, the January 28 Order held:

> Given the circumstances, the Court will grant defendant's motion to dismiss plaintiff's first and second cause of action without prejudice to plaintiff's amending his complaint to fully plead exhaustion. *Should plaintiff fail to properly amend his complaint within the allotted time, the Court will, upon motion by defendant, dismiss these claims with prejudice*.

*Id.* at 13 (emphasis added). The January 28 Order expressly required that Plaintiff amend his complaint within thirty (30) days of the date of the order. *Id.* Accordingly, Plaintiff's deadline to amend his complaint was February 27, 2013.

Plaintiff did not file an amended complaint within thirty days of the January 28 Order and on March 8, 2013, Defendant filed the instant motion to dismiss. Plaintiff's counsel AJ Bosman thereafter submitted a letter on March 11, 2012, "request[ing] an extension of time to file an amended complaint up to and including Friday, March 15, 2013." Dkt. No. 15. This request was

2

based upon counsel's claim that her "computers have been down since Friday and we have not had access to our files, . . . the [February 27] deadline was not entered in our new electronic calendar," and the "oversight was unintentional and the missed deadline was clearly the product of inadvertence." *Id.* The following day, the Court issued a Text Order which denied Plaintiff's letter request for an extension of time as procedurally deficient, and directed Plaintiff to file a timely response to Defendant's motion to dismiss in the form of an opposition or cross motion to amend. *See* Dkt. No. 16. Plaintiff thereafter timely filed an opposition to Defendant's motion to dismiss and a cross-motion to amend, *see* Dkt. No. 17, which Defendant opposes, *see* Dkt. No. 19. The Court assumes the parties' familiarity with the allegations in Plaintiff's complaint, as set forth in the January 28 Order.

### III. DISCUSSION

Plaintiff makes two arguments in opposition to Defendant's instant motion to dismiss and in support of his cross-motion to amend. First, Plaintiff argues that his time to file an amended complaint should be extended for good cause under Federal Rule of Civil Procedure 6(b) because his failure to abide by the deadline set forth in the January 28 Order was the result of excusable neglect. Second, Plaintiff argues that Defendant's motion failed to meet the requirements of N.D.N.Y. Local Rule 7.1 and should therefore be denied.

**A.   Excusable Neglect Under Fed. R. Civ. P. 6(b)(1)(B)**

Plaintiff's counsel has represented to the Court, in a sworn affirmation, that "due to an oversight in failing to calendar the deadline [to file an amended complaint] in our new electronic case management software, the amended complaint was not filed within the time limit set forth in the Court's Order of January 28, 2013." Dkt. No. 17-1 ¶ 4. Plaintiff's counsel states that her failure to file the amended complaint by the deadline established by the Court was "the product of

3

excusable neglect," and that "it would be in the interests of justice" to grant Plaintiff further leave to amend. *Id.* ¶ 8. Plaintiff's counsel also asserts that such leave should be granted because "there is no prejudice to the Defendant." *Id.*[1]

In his memorandum of law in opposition to Defendant's motion to dismiss and in support of his motion to amend, Plaintiff argues that the circumstances resulting in his failure to adhere to the Court's deadline constitute "excusable neglect" under Federal Rule of Civil Procedure 6(b). For the reasons set forth below, the Court finds this argument to be unsupported by controlling case law or the facts of this case.

Plaintiff is correct that a party must show excusable neglect under Fed. R. Civ. P. 6(b)(1)(B) to extend a deadline that has already passed: "When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In addressing what constitutes excusable neglect in the context of Federal Rule of Bankruptcy Procedure 9006(b)(1), which parallels Fed. R. Civ. P. 6(b)(1)(B), the Supreme Court

> referred to "excusable neglect" as an "elastic concept," implying a determination that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Factors to be considered in evaluating excusable neglect include "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105 (2004) (quoting *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd.*

---

[1] Ms. Bosman has apparently elected not to pursue the argument, initially raised in her March 11, 2012, letter to the Court, that her computers were down and she did not have access to her files.

*P'ship*, 507 U.S. 380, 392, 395 (1993)) (internal citations omitted) (alterations in original). The Second Circuit has held that the Supreme Court's "definition of excusable neglect is applicable beyond the bankruptcy context where it arose." *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997) (citations omitted).

In most cases, as here, the first, second, and fourth *Pioneer* factors favor the movant. *See Silivanch*, 333 F.3d at 366 (noting that "delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, . . . [a]nd rarely in the decided cases is the absence of good faith at issue") (quotation and citation omitted). Courts in the Second Circuit, however, "focus[] on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" *Id.* (quoting *Pioneer*, 517 U.S. at 395); *see also Williams v. KFC Nat. Mgmt. Co.*, 391 F.3d 411, 415-16 (2d Cir. 2004) (emphasizing "that it is the third factor – the reason for the delay – that predominates, and the other three are significant only in close cases").

Following the Supreme Court's decision in *Pioneer*, the Second Circuit has "taken a hard line in applying the *Pioneer* test," *In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005) (quotation and citation omitted), and construes the concept of excusable neglect narrowly:

> As one court explained it, *Pioneer* "noted that inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.' Thus, although a late filing' will ordinarily not be excused by negligence, that possibility is by no means foreclosed." In accordance with that holding, a finding that the failure to comply with a filing deadline was excusable may in some circumstances be appropriate. For example, neglect may be excusable where the language of a rule is ambiguous or susceptible to multiple interpretations, or where an apparent conflict exists between two rules. Other grounds may exist, but we need not canvass them today.
> 
> But we do not believe that the possibility that a court may properly find excusable neglect on such grounds alters the principle that

5

> *failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect. . . . Where . . . the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the* Pioneer *test*.

*Canfield*, 127 F.3d at 250-51 (citations omitted) (emphasis added); *see also Silivanch*, 333 F.3d at 368 (finding that "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced" and observing that "[i]n our cases addressing when neglect is 'excusable,' we have therefore taken a hard line"); *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (affirming district court's denial of motion to extend time because "[t]he excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules") (quotation and citation omitted); *In re Johns-Manville Corp.*, No. 04 Civ. 8001, 2006 WL 1676392, *2 (S.D.N.Y. June 14, 2006) (collecting cases in which the Second Circuit and other courts "have strictly limited what attorney error could be considered excusable neglect").

Ms. Bosman has offered no cognizable explanation for her office's failure to adhere to the deadline which would constitute excusable neglect.[2] Plaintiff asserts that "[a]n attorney's inadvertent failure to timely file within a Court set deadline is law office error and constitutes excusable neglect." Dkt. No. 17-2 at 1. This is simply not correct. "Law office failure *rarely* constitutes an excusable neglect." *Shervington v. Village of Piermont*, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010) (citation omitted) (emphasis added). "Attorneys have a duty to be aware of entries on the docket of their client's cases and are on constructive notice of such entries."

---

[2] Plaintiff's counsel has also failed to articulate any support for the conclusory assertion that the Court should permit amendment at this time because "there is no prejudice to the Defendant." In addition, the Court has not been presented with any argument as to how allowing amendment would be "in the interests of justice" or whether such an inquiry is relevant in the first instance. *See* Dkt. No. 17-1 ¶ 8.

*Friedman v. State Univ. of New York at Binghamton*, No. 06-cv-399, 2006 WL 2882980, *3 (N.D.N.Y. Oct. 5, 2006) (citations omitted). "Preoccupied and 'overworked' staff does not establish excusable neglect, and neither does inadvertence." *In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, No. 10 Civ. 2284, 2013 WL 2443748, *6 (S.D.N.Y. June 5, 2013) (citing *In re Enron*, 419 F.3d at 126).

The cases cited by Plaintiff in support of the proposition that mere inadvertence constitutes excusable neglect are inapposite. *E.g.*, *In re Hess*, 347 B.R. 489, 500 (Bankr. D. Vt. 2006) (finding "exigent circumstances" under a bankruptcy provision, 11 U.S.C. § 109, where attorney "suffered a catastrophic, life threatening illness that caused her to be out of her office for several months and unable to work"). Plaintiff has made no showing of the types of circumstances, such as severe illness, which are a recognized basis for a finding of excusable neglect.

In fact, the excuse of computer problems was advanced by Plaintiff's counsel, Ms. Bosman, and rejected a year ago by a fellow judge in an unrelated case pending in the Northern District of New York. *See Miller v. City of Ithaca*, No. 10-cv-597, 2012 WL 1565110 (N.D.N.Y. May 2, 2012) (rejecting the plaintiff's late-filed papers in support of opposition to motion for summary judgment despite counsel's arguments that "computer errors and the need to traditionally file certain documents" constituted excusable neglect). The argument finds no more merit now than it did a year ago.

Plaintiff also argues that he "failed to replead the first and second causes of actions due to an oversight by his attorneys. Plaintiff's failure was not intentional or willful, but instead inadvertent. The delay is therefore excusable neglect." Dkt. No. 17-2 at 3-4. As the Supreme Court held in *Pioneer*, clients must "be held accountable for the acts and omissions of their

7

chosen counsel." *Pioneer*, 507 U.S. at 397. Plaintiff voluntarily chose this attorney as his representative and cannot now avoid the consequences of the acts or omissions of his freely selected agent.

Courts are especially reluctant to find excusable neglect based upon attorney oversight where, as here, the deadline was "crystal clear." *E.g.*, *Kapner v. Riverside Wine & Liquor, Inc.*, No. 09-CV-6565, 2011 WL 5154608, *8 (W.D.N.Y. Oct. 28, 2011) (rejecting the plaintiff's argument of "office neglect" where counsel claimed personnel changes led to failure to adhere to a local rule). Here, the January 28 Order specifically stated that an amended complaint was to be filed within thirty days. Computation of the deadline required no reference to or interpretation of the Federal Rules of Civil Procedure or any other authority. This is nothing more than "garden-variety attorney inattention that fails to rise to excusable neglect." *In re Johns-Manville Corp.*, 2006 WL 1676392, at *3 (quotation and citations omitted). Other courts have considered, and rejected, arguments similar to those interposed by Plaintiff here:

> [D]efendant proffers that the "mis-calendaring of the due date" was likely the result of counsel having "opened the ECF notification [sent on Thursday, September 13, 2007] on Monday the 17th of September and miscalculated the due date from the 17th." This mistake could have been remedied by a simple look at the docket or the ECF notification's time-stamp. The day has long since arrived whereby an attorney can view a docket in an instant at any time from anywhere, thanks to electronic case filing. With that change has come a lessening of sympathy by the court for docket-related errors. Defendant's failure to timely file the Opposition was not the result of excusable neglect.

*Inst. for Policy Studies v. United States Cent. Intelligence Agency*, 246 F.R.D. 380, 385 (D.D.C. 2007) (alternation in original) (citation omitted); *see also Friedman*, 2006 WL 2882980, at *4 (holding that a failure to diligently check the court's docket does not constitute excusable neglect). Under these circumstances, the Court must reject Plaintiff's claim of excusable neglect.

8

*See Silivanch*, 333 F.3d at 369 (finding that "counsel knew there was a thirty-day limitation, but neglected to consult a calendar to determine when it expired"); *Canfield*, 127 F.3d at 249 (noting that defaulting lawyer had been specifically reminded of the time limitation that he ultimately missed).

The Court is compelled to draw attention to a concern that has arisen in addressing the instant motion. As noted above, this is not the first time that Plaintiff's counsel, Ms. Bosman, has argued excusable neglect based upon a computer-related malfunction. *See Miller,* 2012 WL 1565110. As discussed above, the Court finds the argument here to be entirely unsupported by the law and the facts. The Court does not doubt that some oversights in the practice of law are owed to legitimate issues with information technology and/or personnel that may, in certain circumstances, give rise to a finding of excusable neglect. However, this argument, now twice raised in two separate actions by Plaintiff's counsel, has no factual or legal basis under these circumstances.

## B.    N.D.N.Y. Local Rule 7.1(a)

Local Rule 7.1(a) requires that "all motions and opposition to motions require a memorandum of law, supporting affidavit, and proof of service on all the parties." L.R. 7.1(a). Plaintiff argues that Defendant's motion should be denied because the Notice of Motion and Motion to Dismiss, *see* Dkt. No. 14, lacks a memorandum of law, supporting affidavit, and proof of service on all parties, *see* Dkt. No. 17-2 at 4.

The Court will not deny Defendant's motion on these grounds. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Liparulo v. Onondaga Central School Dist.*, No. 06-CV-1068, 2009 WL 3790187, *1 (N.D.N.Y. Nov. 12, 2009) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)).

Defendant's Notice of Motion sufficiently described the basis for the Motion to Dismiss: Plaintiff's failure to meet the thirty-day deadline set forth in the Court's January 28 Order. That is all that was required to put Plaintiff and the Court on notice as to the grounds for Defendant's motion.

The parties have extensively briefed the underlying motion to dismiss and the Court will not and need not revisit those issues again. Defendant's underlying motion to dismiss was granted without prejudice, and Plaintiff failed to meet the conditions set forth in the January 28 Order which would avoid conversion of that dismissal into one with prejudice. Under these circumstances, requiring Defendant to submit a memorandum of law and affidavit in support of the instant motion would unnecessarily place form over substance.

Defendant is nevertheless respectfully reminded to submit a certificate of service with all future filings for which one is required, pursuant to the Northern District of New York's Local Rule 7.1 and General Order No. 22.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED** and Plaintiff's First and Second Causes of Action are **DISMISSED WITH PREJUDICE**; and the Court further

**ORDERS** that Plaintiff's cross-motion to amend is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 28, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge