**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KRZYSZTOF DOROZ,**

                           **Plaintiff,**

    **vs.**                                     **6:12-CV-391
                                                (MAD/ATB)**

**TECT UTICA CORP.,**

                           **Defendant.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**BOSMAN LAW OFFICE**               **AJ BOSMAN, ESQ.**
6599 Martin Street                        **DANIEL W. FLYNN, ESQ.**
Rome, New York 13440
Attorneys for Plaintiff

**CLARK, HILL LAW FIRM**            **JAMES R. STADLER, ESQ.**
200 Ottawa Avenue NW
Grand Rapids, Missouri 49503
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 9, 2012, Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that Defendant both discriminated and retaliated against him based on his national origin and Polish descent. *See* Dkt. No. 3. In a January 28, 2013 Memorandum-Decision and Order, the Court granted Defendant's motion for judgment on the pleadings as to counts I and II, dismissing Plaintiff's Title VII claims of discrimination and retaliation, with leave to replead within thirty (30) days of that Memorandum-Decision and Order. *See* Dkt. No. 13. After Plaintiff failed to replead counts I and II within the thirty-day period, pursuant to a Memorandum-Decision and Order dated October 28, 2013, this Court dismissed

Plaintiff's Title VII claims with prejudice and denied Plaintiff's cross motion to amend the complaint. *See* Dkt. No. 20.

Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, moving to dismiss Plaintiff's remaining clams and requesting an award of attorneys fees under 42 U.S.C. § 1988(b). *See* Dkt. No. 34.

## II. BACKGROUND

On October 28, 2010, Plaintiff was terminated from his employment with Defendant after allegedly committing insubordination when he failed to comply with the instructions of his supervisors. *See* Dkt. No. 3 at ¶¶ 6, 8. Prior to his termination, Plaintiff had been employed by Defendant since June, 2005, holding the position of a "[p]rocess grinder." *Id.* at ¶¶ 3-4. On October 28, 2010, Plaintiff was told by George Derby, another of Defendant's employees, that William Brown had "told Mr. Derby that Plaintiff was being moved to the stamping department."[1] Dkt. No. 39 at 4. Plaintiff alleges that he did not know whether Mr. Derby was joking about the reassignment, and so he remained at his work station in process grinding. *Id.*; Dkt. No. 40 at ¶ 9. Later that day, the foreman, William Brown, approached Plaintiff at his work station in process grinding and asked him why he had not moved to the stamping department, to which "Plaintiff responded that he would 'try to stamp.'"[2] Dkt. No. 3 at ¶ 6. During his deposition, Plaintiff

---

[1] Although Plaintiff initially alleged in his complaint that Mr. Brown was the individual who "without warning, removed Plaintiff from his regular duties and sought to assign him duties that he had never performed in the past," Dkt. No. 3 at ¶ 6, in both Defendant's motion for summary judgment, Dkt. No. 34-11 at ¶ 8, and Plaintiff's memorandum in opposition to Defendant's motion for summary judgment, it was agreed that Mr. Derby was the initial individual to instruct Plaintiff that he was being moved to the stamping department. *See* Dkt. No. 39 at 4.

[2] Although in Plaintiff's original complaint he alleges that he responded to Mr. Brown's initial questioning that he would "'try to stamp'," Dkt. No. 3 at ¶ 6, in Plaintiff's memorandum in

(continued...)

2

testified that Mr. Brown told him on two different occasions that he wanted him to go to the stamp operation. *See* Dkt. No. 42-3 at 4. Plaintiff claims that he asked Mr. Brown why people with less seniority were not required to move to stamp operation. *See id.* at 5. Despite twice being asked by Mr. Brown to go to the stamp operation, Plaintiff admits that he still did not go and that he did not provide him with any explanation for his failure to comply with this order. *See id.* at 4-5. When Mr. Brown questioned Plaintiff as to why he had not gone to the stamping department, Plaintiff allegedly stated "'I am not telling you I want to go and I am not telling you I don't want to go over there.'" Dkt. No. 40 at ¶ 11.

After failing to comply with the multiple instructions for him to move to the stamping department, Mr. Brown took Plaintiff to the supervisors office where he called Steve Petrowski, his union representative, asking him to come and speak to Plaintiff.[3] *Id.* at ¶ 12. During his conversation with Mr. Petrowski, Plaintiff was told that if he did not go to the stamping department, then Mr. Brown would send Plaintiff home. *Id.* at ¶ 13. Plaintiff then contends that "Mr. Brown began a countdown for Plaintiff, at which point Plaintiff stated that he would go to the stamping department," and that Mr. Brown allegedly answered "'Too late! You're going home!'"[4] *Id.* at ¶ 14. Despite being told to gather his personal belongings and go home, Plaintiff

---

[2](...continued)
opposition to Defendant's motion for summary judgment, Plaintiff now claims that he responded to Mr. Brown by stating that "he was 'neither refusing or not refusing' to go." Dkt. No. 39 at 4.

[3] Defendant disagrees with this account of the facts, and instead argues that Steve Petrowski was brought over to where Plaintiff was sitting at his station in process grinding and that the conversation between them occurred there, not in the supervisors office. *See* Dkt. No. 40 at ¶ 12.

[4] Defendant also disagrees with Plaintiff's recollection of these events and instead suggests that after supervisor Stu Service joined Mr. Brown, Mr. Petrowski and Plaintiff, "Brown informed Doroz in the presence of all of those individuals that Doroz was suspended for the day for insubordination, that he was to punch out and go home, and see Donna Prentice, the Human

(continued...)

3

refused and instead went back to his work station. *See* Dkt. No. 42-3 at 6. Plaintiff alleges that he then attempted to walk to the office to speak with a human resources representative, but was physically prevented from doing so by Mr. Service. Dkt. No. 40 at ¶ 15. Although Plaintiff did not provide a reason for his refusal to go to the stamping department at the time, Plaintiff now contends that he did not want to go because of "private medical issues." *Id.* at ¶ 20.

At some point thereafter, Mr. Petrowski asked Donna Prentice, the Human Resource Manager, to come down and speak with Plaintiff. Ms. Prentice was told that Plaintiff "had refused his job assignment, and had subsequently refused to leave the building after having been told to do so because of his insubordination." *Id.* at ¶¶ 16, 18. Ms. Prentice then instructed Plaintiff "to go home and come to see her at 10:00 a.m. the following morning. Doroz again refused. He gave Prentice no explanation for his actions." *Id.* at ¶ 20. Plaintiff denies that Ms. Prentice verbally advised him that he was terminated at this time, but instead alleges that he did not discover that he was terminated until the following Monday morning. *Id.* at ¶ 21. After Plaintiff failed to comply with the numerous instructions to leave the premises, Ms. Prentice instructed operations manager, Mike Findley, to call the police. *Id.* at ¶ 22.

Shortly thereafter, a police officer arrived at Defendant's property, whereupon he was advised of the situation at hand. *Id.* at ¶ 23. Although Plaintiff contests this fact, the first police officer had an initial conversation with Plaintiff, but then found it necessary to call for police backup because Plaintiff refused to comply with his instructions to leave the premises. *Id.* Although Plaintiff denies the fact that he refused to listen to the instruction of the first police officer, after the second police officer arrived on the scene, Plaintiff finally agreed to leave. *Id.* at

---

[4](...continued)
Resource Manager, the following morning." Dkt. No. 40 at ¶ 14.

¶ 25. At the request of one of the police officers, Ms. Prentice asked Mr. Brown to draft a letter for her signature, which would terminate Plaintiff's employment. *Id.* at ¶¶ 26-27. Plaintiff contests Defendant's argument that he was handed this notice of termination by the police officers before leaving the premises. *Id.* at ¶ 28.

The following day, Plaintiff returned to Defendant's place of employment and was met by Defendant's general manager in the parking lot. *Id.* at ¶ 29. Plaintiff requested that he receive a three-day suspension as a punishment for his insubordination, which the general manager denied. *Id.* at ¶ 30. Subsequent to his termination, Plaintiff's union chose not to file a grievance on his behalf, but instead submitted a request for a last chance agreement,[5] which Defendant denied. *Id.* at ¶ 31. On November 5, 2010, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), alleging that Defendant discriminated against him based on his national origin and age. *See* Dkt. No. 13 at 2. On May 2, 2011, after conducting an investigation, the NYSDHR determined that there "is NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." Dkt. No. 42-5 at 2 (emphasis in original). Plaintiff then filed the same charge of discrimination with the EEOC, and on July 8, 2011, "the EEOC issued a Dismissal and Notice of Rights 'adopting the findings of the state or local fair employment practices agency that investigated this charge.'" Dkt. No. 13 at 2. Plaintiff was then notified that if he wished to bring a federal suit, he had ninety (90) days to do so. *Id.* Plaintiff initially filed a Summons with Notice in Supreme Court in the County of Oneida on October 11, 2011, but Defendant subsequently removed this matter to this Court on March 1, 2012. *Id.* at 3.

---

[5] "[L]ast chance agreements were typically used when an employee was confused about a job assignment or was not properly trained due to management's fault." *See* Dkt. No. 40 at ¶ 32.

# III. DISCUSSION

## A. Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## B. Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "because direct evidence of an employer's discriminatory intent is rare and 'must often be inferred

6

from circumstantial evidence.'" *Serby v. New York City Dep't of Educ.*, No. 09-CV-2727, 2012 WL 928194, *5 (E.D.N.Y. Mar. 19, 2012) (quoting *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006)). However, "'[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to other areas of litigation.'" *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. Appx. 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). Indeed, "'[i]t is not beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)). Furthermore, "[e]ven in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137 (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). The Second Circuit has held that:

> In discrimination cases, the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a "sparing" use of the summary judgment device because of juries' special advantages over judges in this area . . .
>
> Nonetheless, an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. She must come forth with evidence sufficient to

allow a reasonable jury to find in her favor.

*Brown v. Henderson*, 257 F.3d 246, 251-52 (2d Cir. 2001) (internal citations and quotations omitted).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys. Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (internal citations omitted). "Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citation omitted); *see also Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997) (same); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (same).

**C.     The *McDonnell Douglas* Standard**

Each of Plaintiff's claims are evaluated pursuant to the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03(1973).

> Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S. Ct. 1817. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id.* Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination.

*Gorzynski*, 596 F.3d at 106 (citing *Holcomb*, 521 F.3d at 138). To rebut the articulated justification for the adverse action, "the plaintiff must show both that the reason was false, and

8

that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted).

**D.      42 U.S.C. § 1981 Discrimination Claims**

42 U.S.C. § 1981 provides that "all persons . . . shall have the right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  In order to establish a claim of discrimination under 42 U.S.C. § 1981, Plaintiff must show the following: "'(1) that he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981.'" *Broich v. Inc. Vill. of Southampton*, 462 Fed. Appx. 39, 42 (2d Cir. 2012) (quoting *Lauture v. IBM*, 216 F.3d 258, 261 (2d Cir. 2000)).  In order to establish the second element of § 1981, the plaintiff's claim must meet "the same burden-shifting analysis as intentional discrimination claims brought under Title VII of the Civil Rights Act of 1964," as set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Broich*, 462 Fed. Appx. at 42.  Thus, pursuant to *McDonnell Douglas*, Plaintiff must set out a prima facie case of discrimination by demonstrating: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *See Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009).

If a plaintiff is successful in satisfying these four elements and thereby establishes a prima facie case of discrimination, the burden then shifts to the defendant to "rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  If the defendant is successful in introducing a non-discriminatory reason for taking the adverse employment action against the plaintiff, the

9

burden then shifts back to the plaintiff. *See Broich*, 462 Fed. Appx. at 42-43. The plaintiff then has the burden to "'come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination.'" *Id.* at 43 (quoting *Weinstock*, 224 F.3d at 42).

### *1. Plaintiff's right to be free from discrimination in the workplace*

In Plaintiff's third cause of action, he alleges that "Defendant violated [his] rights to be free from discrimination on the basis of ancestry and ethnicity as guaranteed to [him] under 42 U.S.C. § 1981," and that "Plaintiff has sustained damages by reason of the Defendant's wrongful actions and omissions and is entitled to compensation therefor." Dkt. No. 3 at ¶¶ 18-19. In Plaintiff"s memorandum in opposition to Defendant's motion for summary judgment, he alleges that he was subjected to a "discriminatory work environment." Dkt. No. 39 at 8. Plaintiff alleges that he was "repeatedly called 'Polack' by his co-worker, in the presence and hearing of George Derby, Plaintiff's group leader, who neither took action nor reported such discriminatory behavior." *Id.*

However, although George Derby was referred to by Plaintiff as a "group leader," Defendant rebuts the presumption that Derby was in a managerial position with TECT Corp., and argues that there is no indication suggesting otherwise. *See* Dkt. No. 42 at 5 ("George Derby was not part of management but was instead an hourly production employee and part of the collective bargaining unit along with Doroz"); *see also Rosinkski v. Am. Axle & Mfg., Inc.*, 402 Fed. Appx. 535, 537 (2d Cir. 2010) ("Rosinski puts forth just a few examples of inappropriate behavior by *co-workers* . . . [which] cannot be imputed to American Axle") (emphasis added). Additionally, during his employment with Defendant, Plaintiff did not file any allegations or complaints of discrimination with the Human Resources office. *See* Dkt. No. 42-2 ("[Donna Prentice, Human

10

Resources Manager for Defendant,] was not aware that any employee referred to Doroz as 'Polack' and [she is] aware of no evidence that any member of management was aware of this alleged fact prior to Doroz's termination"). Plaintiff has not put forth any evidence demonstrating that he was regularly subjected to discriminatory remarks or that any of Defendant's actions were motivated because of Plaintiff's race. The isolated comments, made outside the presence of management, are simply insufficient to establish that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Sassaman*, 566 F.3d at 312.

Based on the foregoing, the Court grants Defendant's motion for summary judgment as to Plaintiff's § 1981 claim of discrimination. .

### *2. Failure to promote*

In Plaintiff's memorandum in opposition to Defendant's motion for summary judgment, Plaintiff also alleges that Defendant discriminated against him during his employment by failing to promote him on two occasions. Dkt. No. 39 at 8. The standard needed to establish a *prima facie* case of discriminatory failure to promote requires Plaintiff to show that: "'(1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having plaintiff's qualification.'" *Yu v. N.Y. City. House. Dev. Corp.*, 494 Fed. Appx. 122, 124-25 (2d Cir. 2012) (quotation omitted). Additionally, "a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably," would tend to show a discriminatory failure to promote by Defendant. *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. Oct.

11

10, 2005) (internal quotations omitted).

Plaintiff contends that he was twice encouraged by George Derby to apply for promotion to the maintenance department, and that for both promotions he "was twice passed over . . . in favor of employees who were American born citizens, with less seniority than the Plaintiff." *Id.* Defendant rebuts this claim. *See* Dkt. No. 42-2 at 2. In the Declaration of Donna Prentice, it is noted that "[u]nder the Collective Bargaining Agreement in effect at TECT at the relevant time, promotions and bids were determined solely on the basis of merit without regard to seniority." *Id.* at ¶ 2A. Although Plaintiff may have been interested in two employment promotions, Prentice also states in her declaration that "Doroz *applied for only one internal position* during the time he worked at TECT. That position was in the maintenance department. Another employee possessing the requisite skill set was hired to fill this position. Doroz did not possess the requisite skill set for the position." *Id.* at ¶ 2B (emphasis added). According to Prentice, Plaintiff did not apply to the other promotion that he had expressed interest in. *Id.* at ¶ 2C. It is established that merely expressing an interest in a position, without actually applying for it, is insufficient to support a failure to promote claim. *See Washington v. Acorda Therapeutics, Inc.*, No. 11 CV 5085, 2014 WL 4467820, *8 (S.D.N.Y. Aug. 28, 2014) (citation omitted). In his opposition, Plaintiff fails to set forth anything more than conclusory statements suggesting that he was denied either the promotion that he actually applied for or the promotion that he only expressed interest in because of his national origin. *See* Dkt. No. 39 at 8-9.

Further, Plaintiff has presented no evidence suggesting that the individuals responsible for making decisions regarding promotion had made reference to Plaintiff's ethnicity or in any way subjected him to invidious comments regarding his ethnicity. Additionally, the fact that Plaintiff may have had more seniority than others who received these promotions is irrelevant, as the

12

Collective Bargaining Agreement makes clear. Simply stated, Plaintiff was not promoted to the maintenance department because he was not qualified for the position. *See* Dkt. No. 42-2 at ¶ 2B. There is nothing in Plaintiff's submissions that would lead a reasonable juror to find that Defendant's reasons were offered just as a pretext for discrimination, as this practice for promotions is outlined in Defendant's Collective Bargaining Agreement.

Based on the foregoing, the Court grants Defendant's motion for summary judgment as it relates to Plaintiff's § 1981 discrimination claim based on Defendant's failure to promote.

### *3. Discrimination based on Plaintiff's discipline and termination*

Finally, Plaintiff argues that he was discriminated against by Defendant "in his discipline and termination." Dkt. No. 39 at 9. Here, Plaintiff compares his termination for insubordination to the insubordination and temporary termination of Timothy Hanrahan by alleging that "[w]hen looking at the two instances, it becomes clear that Plaintiff was treated in a completely different manner than his American born counterpart." *Id.* Plaintiff alleges that, although Hanrahan's employment with Defendant was terminated after he "directly refused the work order directed to him," and used profane language towards his supervisors, his employment was eventually reinstated. *Id.* at 9-10. Unlike Plaintiff, Hanrahan was allowed to return to work under the "last-chance agreement." Dkt. No. 34-11 at 10. Again, in order to set forth a *prima facie* case of discriminatory discipline and termination, Plaintiff has the burden of establishing: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Gamache*, 566 F.3d at 312. If there is no direct evidence of an employer's discriminatory intent, Plaintiff then has to "show that the employer treated plaintiff less favorable than a similarly situated employee outside

13

his protected group" but who is similar "in all material respects to the individual whom [he] seeks to compare [him]self with." *Mandell*, 316 F.3d at 370.

Plaintiff has failed to set forth any direct evidence suggesting that he was terminated from his employment with Defendant for any other reason than the severity of his insubordination occurring on October 28, 2010. *See* Dkt. No. 34-11 at 17. In his opposition to Defendant's motion for summary judgment, Plaintiff compares the circumstances surrounding his termination with circumstances surrounding two of Defendant's other employees, Timothy Hanrahan and William Sharpe. Dkt. No. 39 at 9-10. In regards to Plaintiff's comparison to the termination of Hanrahan, the only similarity that exists between the two individuals is that they both have held employment with Defendant and they were both terminated for insubordination. *Id.* at 9. Additionally, the only similarity that existed between Sharpe and Plaintiff was that allegedly both required police escort from the Defendant's property.[6] *Id.* at 10.

Plaintiff's comparison to both Hanrahan and Sharpe fail to suggest any circumstantial inference that Plaintiff's discipline and termination were different than that which occurred for either of these two individuals as he fails to show how they were similarly situated. *See Shumway*, 118 F.3d at 636 ("The last element of a prima facie case may be proven by showing that a [non-polish employee] similarly situated was treated differently"). According to Plaintiff, "William Sharp[e] (who is of American descent) was sexually harassing a female employee, and the female employee called the police in response." Dkt. No. 39 at 10. There is no indication that Sharpe's discipline had anything to do with an act of insubordination, and Plaintiff makes no

---

[6] Defendant rebuts Plaintiffs allegation that William Sharpe had to be escorted from the Defendant's property. In her declaration, Donna Prentice states: "I am unaware of the police reporting to TECT in connection with the Sharpe incident. If the police had reported to TECT, I would have been aware of this fact in light of my position." Dkt. No. 42-2 at ¶ 4D.

14

attempt at arguing otherwise. *Id.* Further, according to Donna Prentice, in October of 2008, she "heard . . . a rumor about an incident that allegedly happened between Sharpe and a female employee in June 2008." Dkt. No. 42-2 at ¶ 4A. Ms. Prentice investigated the incident and the female employee refused to discuss the event with her. *Id.* Despite not being able to substantiate the rumor, Ms. Prentice required Sharpe to attend training about workplace harassment. *See id.*

Plaintiff correctly asserts that Hanrahan was terminated for insubordination, but was later reinstated. Hanrahan's reinstatement was based on an investigation establishing that he had never been trained to use the harness he was accused of misusing. *See* Dkt. No. 34-1 at ¶ 42. As Ms. Prentice testified, last-chance agreements, which were used infrequently, were used when an employee, like Hanrahan, was confused about a job assignment or was not properly trained due to management's fault. *See id.* at ¶ 32. Plaintiff, however, was terminated for refusing to obey orders from several levels of Defendant's management and one police officer. Unlike Hanrahan's conduct, Plaintiff's conduct resulted in a production stoppage and required police intervention. *See id.* at ¶¶ 33-34. Aside from the fact that both Hanrahan and Plaintiff were terminated for insubordination, the situations were in no way similar.

Alternatively, even if the Court were to find that Plaintiff was able to establish a *prima facie* case of discrimination relating to his discipline and termination, Plaintiff's claim fails as he is unable to overcome his burden of providing "evidence that the defendant's proffered non-discriminatory reason is a mere pretext for actual discrimination." *Briotch*, 462 Fed. Appx. at 43 (internal quotations omitted). In reviewing the record, it is clear that Plaintiff was terminated as a result of his failure to comply with the instructions of his supervisors, and not from a lack of training or understanding.

Based on the foregoing, the Court grants Defendant's motion for summary judgment as it

relates to Plaintiff's § 1981 claim that he was discriminated against in his discipline and termination by Defendant.

**E.      42 U.S.C. § 1981 Retaliation Claim**

Plaintiff also presents a claim of retaliation pursuant to 42 U.S.C. § 1981, alleging that Defendant retaliated against him based on his national origin by terminating his employment and later refusing to reverse his termination. Dkt. No. 39 at 12. However, Defendant argues instead that Plaintiff's employment was terminated and he was not permitted to be reinstated due to the severity of his insubordination. *See* Dkt. No. 34-11 at 17.

Like Plaintiff's 42 U.S.C. § 1981 discrimination claim, a claim of retaliation under § 1981 is also analyzed in accordance with the Tile VII burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). To make out a *prima facie* case of retaliation under Title VII, a plaintiff must plausibly allege that: "'(1) []he was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'" *Gordon v. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (quotation omitted). Proof of causation can be shown either indirectly through circumstantial evidence, or "directly, though evidence of retaliatory animus directed against the plaintiff by the defendant." *See id* at 117. In order to show a retaliatory motive by means of circumstantial evidence, there must be temporal proximity between the adverse employment action and the protected activity. *See Muhammad v. Juicy Couture/Liz Clairborne, Inc.*, No. 09-Civ-8978, 2010 WL 4032735, *6 (S.D.N.Y. July 30, 2010). "At the pleading stage, Plaintiff 'need not establish [such] a prima facie case of discrimination, but must

nonetheless allege evidence stating a plausible claim of retaliation.'" *Stewart v. City of New York*, No. 11 Civ. 6935, 2012 WL 2849779, *10 (S.D.N.Y. July 10, 2012) (quotation and other citation omitted).

In Plaintiff's second cause of action, he contends that he was retaliated against by Defendant on two occasions: (1) Defendant "physically prevented" him from going to the office to "explain his situation," which he claims is a "protected activity"; and (2) Defendant refused Plaintiff's request "that his termination be converted to a suspension as other employees before him had been allowed to do, such as Tim Hanrahan." Dkt. No. 39 at 12. However, even assuming that Defendant prevented Plaintiff from going to the office to "explain his situation," Plaintiff has not established that either that preventative action or Defendant's refusal to reinstate his employment stemmed from a retaliatory motive. It is clear from the evidence in the record that Plaintiff was terminated from his employment with Defendant, and that his employment was not reinstated, due to the severity of his insubordination. Plaintiff even admitted in his response to Defendant's statement of material facts that he had committed insubordination. *See* Dkt. No. 40 at ¶ 30.

Additionally, as set forth in Defendant's memoranda of law in support of its motion for summary judgment, when Plaintiff took employment with Defendant in 2005, he entered into and signed a collective bargaining agreement which allowed Defendant to immediately terminate an employee that committed insubordination. *See* Dkt. No. 34-3 at 6. As a member of the union, by entering into the collective bargaining agreement, Plaintiff was bound by the terms within the agreement, even if he failed to read the provisions beforehand in order to understand their implications. *Id.* Due to his admission of his insubordination and his familiarity with the collective bargaining, Plaintiff has failed to set forth a prima facie claim of retaliation.

17

Based on the foregoing, the Court grants Defendant's motion for summary judgment.

**F.    Legal fees**

In Defendant's motion for summary judgment, it moves, pursuant to 42 U.S.C. § 1988(b), for the Court to award Defendant reasonable attorney's fees in the event that Defendant prevails on its motion for summary judgment.  Dkt. No. 34-11 at 17.  Pursuant to section 1988(b),"[i]n any action or proceeding to enforce a provision of section 1981 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b).  Defendant contends that due to the fact that "Doroz has not even presented sufficient evidence to make out a prima facie case[,] . . . Doroz admitted that he just assumed TECT acted with discriminatory intent and he further admitted he had no evidence of discrimination," the Court should award Defendant attorney's fees as "Doroz's claims were frivolous, unreasonable, and without foundation."  *See* Dkt. No. 34-11 at 18.

"Attorney's fees may be awarded to a successful defendant in a civil rights action pursuant to 42 U.S.C. § 1988 where the underlying claim is 'frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so.'" *Ehrlich v. Incorporated Vill. of Sea Cliff*, 389 Fed. Appx. 59, 61 (2d Cir. 2010) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).  "Though a showing that the plaintiff acted in bad faith will further support an award under section 1988, the determination generally turns on whether the claim itself is clearly meritless."  *Id.*  "A claim is frivolous when it lacks an arguable basis either in law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (internal quotation marks omitted).  "The determination as to whether a claim was frivolous, unreasonable, or groundless is not a purely factual inquiry. . . .  Thus, such a determination is ordinarily reviewed . . . for abuse of discretion." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998).

The Second Circuit has cautioned that:

> Certain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous. . . . For example, a court cannot properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim. Nor may a claim properly be deemed groundless where the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law.

*Id.* at 770-71 (internal citations omitted).

The Second Circuit in *Gerena-Valentin v. Koch*, 739 F.2d 755 (2d Cir. 1984), awarded defendant attorney's fees because, amongst other reasons, "'at no time . . . did the plaintiff attempt to produce any evidence whatsoever in support of his retaliation and conspiracy claims.'" *Berweger*, 121 F. Supp. 2d, 334, 348 (S.D.N.Y. Nov. 8, 2000) (quoting *Gerena-Valentin*, 739 F.2d at 761). Similarly, the Second Circuit awarded attorney's fees to a "defendant because the plaintiff 'could not point to a deprivation of any single right conferred by federal law or the . . . Constitution,' and had unsuccessfully challenged the City's action in state court." *Berweger*, 121 F. Supp. 2d at 348 (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir. 1985)).

In the present case, in his submissions, Plaintiff attempts to set forth factual justifications supporting his claim of discrimination and retaliation. *See* Dkt. No. 39. Although Plaintiff is unsuccessful in his § 1981claims of discrimination and retaliation, this does not necessarily mean that Plaintiff's claims were unreasonable. *See Berweger*, 121 F. Supp. 2d at 348 ("In general, the fact that a plaintiff ultimately loses the case is not in itself sufficient justification for the assessment of fees in favor of the defendant") (citation omitted). Although unsuccessful, the Court finds that Plaintiff's claims do not rise to the level of being frivolous, unreasonable or without justification. *Berweger*, 121 F. Supp. 2d at 347. Accordingly, the Court denies

19

Defendant's request for attorney's fees.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for attorney's fees is **DENIED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 27, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge